IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES EUGENE WRIGHT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:16-CV-975-WKW |
| | ) | [WO] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Charles Eugene Wright's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. Doc. No. 1.[1]

## I.   INTRODUCTION

On August 20, 2015, Wright appeared before this court and pled guilty under a plea agreement to receiving child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1), and possession of child pornography in interstate commerce, in violation of 18 U.S.C. § 2252(a)(5)(B) & (b)(2). The plea agreement contained a waiver provision whereby Wright relinquished his right to appeal and collaterally attack his conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. On December 9, 2015, the district court sentenced Wright to 84

---

[1] References to "Doc. No(s)." are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of Court. Unless otherwise noted, pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

months in prison for each count, the terms to run concurrently. Wright took no direct appeal.

On December 13, 2016, Wright, proceeding *pro se*, filed this § 2255 motion presenting claims that his counsel rendered ineffective assistance by failing to (1) have a psychological evaluation of Wright conducted prior to his guilty plea; (2) consult with him regarding his right to appeal; (3) challenge the indictment for multiplicity and double jeopardy violations; (4) investigate or challenge inaccurate information in the indictment; and (5) challenge the warrantless search of Wright's computer. Doc. No. 1; Doc. No. 2 at 9–26.

On August 4, 2017, Wright amended his § 2255 motion to add a claim that the magistrate judge who took his guilty plea lacked the statutory and constitutional authority to accept his guilty plea. Doc. No. 24.

After consideration of the parties' submissions and the record, the court concludes that Wright's § 2255 motion should be denied and this case dismissed with prejudice.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C.

§ 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

## B.     Ineffective Assistance of Counsel Claims

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id.*

3

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.    *Failure to Obtain Psychological Evaluation before Guilty Plea*

Wright says his counsel was ineffective for failing to have a psychological evaluation of Wright conducted prior to his guilty plea. *See* Doc. No. 2 at 5–6 & 8; Doc. No. 16 at 4; Doc. No. 18 at 3–4. Although Wright's argument here is unclear, he appears to suggest that such a psychological evaluation would have uncovered evidence that he was

incompetent to understand the legal proceedings that resulted in his guilty plea, meaning his guilty plea was unknowing and involuntary. *See* Doc. No. 16 at 4; Doc. No. 18 at 3–4.

After Wright's change of plea hearing and before sentencing, Wright was referred to two psychologists for mental health evaluations. *See* Doc. Nos. 8-7 & 8-8. Wright's counsel used these evaluations as exhibits and evidence during Wright's sentencing hearing to argue that Wright was a low-risk offender. *See* Doc. No. 8-6 at 9–10. Neither doctor who evaluated Wright opined that Wright was not competent.

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)). The record yields no support for Wright's claim of incompetency. The presentence investigation report ("PSI") prepared in Wright's case indicates that Wright "reported no history of mental or emotional problems, and no history of treatment for such problems, as corroborated by [Wright's sister]." *See* Doc. No. 10-2 at 12, ¶ 52. Although the mental health evaluations performed before Wright's sentencing indicated that he had below-average cognitive abilities, there is no indication from the record that Wright could not understand the proceedings against him. The evidence suggests that, during the proceedings, Wright consulted with his lawyer and exhibited no irrational behavior. The record shows Wright to have been alert and coherent. At the change of plea hearing, the magistrate judge questioned Wright to determine his competency to enter an informed

guilty plea and found that Wright was fully competent to do so, that he understood the charges against him, that he understood the consequences of his plea, and that his plea was knowing and voluntary. *See* Doc. No. 8-4 at 15. Nothing indicated that Wright did not have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or that he did not have a "rational as well as factual understanding of the proceedings against him." *See United States v. Dusky*, 362 U.S. 402 (1960).

To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at 1106). To prevail on such a claim, the petitioner must prove by a preponderance of the evidence that he was in fact incompetent to stand trial. *Johnston*, 162 F.3d at 637 n.7; *see also Battle*, 419 F.3d at 1298–99; *Medina,* 59 F.3d at 1106.

Wright fails to present facts that positively, unequivocally, and clearly generate a legitimate doubt about his competency to assist in his defense, stand trial, or enter a valid (i.e., knowing and voluntary) guilty plea. Further, he presents no facts to support any

inference that he was mentally incompetent at the time of his offense.[2] He merely asserts that he did not have the benefit of a "psychological or competency evaluation prior to the plea colloquy." Doc. No. 2 at 5-6. Consequently, Wright has not demonstrated that his counsel's failure to pursue the issue of his competency or to have him psychologically evaluated prior to entry of his guilty plea fell below an objective standard of reasonableness or that he was prejudiced by his counsel's actions. *Strickland*, 466 U.S. at 687–89. Nor is Wright entitled to an evidentiary hearing to explore this issue. An evidentiary hearing is not a fishing expedition for facts as yet unsuspected but is instead "an instrument to test the truth of facts already alleged in the habeas petition." *Jones v. Polk*, 401 F.3d 257, 269 (4th Cir. 2005); *see also, e.g., In re Shriner*, 735 F.2d 1236, 1241 (11th Cir. 1984). Wright may not have relief on this claim of ineffective assistance of counsel.

### 2.   *Failure to Consult about Appeal*

Wright contends that his counsel rendered ineffective assistance by failing to consult with him regarding his right to appeal.[3] *See* Doc. No. 2 at 9–13.

Even if a client has not made a specific request of his counsel to file an appeal, counsel generally must "consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant in the defendant's position would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular

---

[2] In order to prevail on a claim of mental incompetency at the time of the offense (i.e., a defense of insanity), a defendant is required to prove by clear and convincing evidence that "as a result of a severe mental disease or defect, [he] was unable to appreciate the nature and quality or the wrongfulness of his acts." *See* 18 U.S.C. § 17(a), (b).

[3] Wright makes no allegation that he ever asked his counsel to file an appeal.

defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega,* 528 U.S. 470, 480 (2000); *see also, e.g., Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007). Adequate consultation means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478; *Thompson*, 504 F.3d at 1206.

In an affidavit filed with this court, Wright's former counsel avers that he advised Wright of his right to appeal. Doc. No. 5 at 1. Wright admits that, after sentencing, he received a letter from counsel asking him if he wished to appeal. Doc. No. 2 at 12. According to Wright, however, counsel did not advise him of the time limit for filing an appeal or explain the procedures required to perfect an appeal. *Id.* Wright maintains that he "did not even know what an appeal was or the effects and procedures involved with an appeal." *Id.* Wright did not reply to counsel's letter, and Wright says there was no further contact between him and counsel after sentencing. *Id.* Wright states that he was transferred to a different facility a few days after receiving the letter from counsel. *Id.* Wright maintains that if he better understood his appeal rights, he would have asked his counsel to file an appeal for him.

This case comes to the court in the context of guilty plea proceedings, where the record indicates numerous instances of Wright's appeal rights being mentioned to him by the court. The record reflects that during the change of plea colloquy, the magistrate judge questioned Wright about the plea agreement, which contained an appeal waiver. Doc. No.

8-4 at 5. The magistrate judge asked Wright if he was "fully satisfied with the counsel, representation, and advice given to you in this case by your attorney," and Wright answered affirmatively. *Id*. Further, Wright affirmed that he had "an opportunity to read and discuss the plea agreement with [his] lawyer before [he] signed [the plea agreement]." *Id*. Wright then affirmed that he understood the "terms of the plea agreement." *Id*. at 5–6. The magistrate judge then questioned Wright regarding the appeal waiver. *Id.* at 9. When asked if he understood that "under certain circumstances, you or the government may have the right to appeal any sentence that the Court imposes," Wright answered affirmatively. *See Id*. at 9. Wright further indicated that he understood that the "plea agreement contain[ed] a waiver of the right to appeal or collaterally attack [his] sentence." *Id.* After this colloquy, the magistrate judge found that Wright was "fully competent and capable of entering an informed plea, that [Wright was] aware of the nature of the charges and the consequences of the plea, and that the plea of guilty [was] a knowing and voluntary plea." *Id*. at 15.

At Wright's sentencing hearing, the Government summarized the plea agreement and noted that it contained a "waiver of appeal and collateral attack," which Wright did not question. *See* Doc. No. 8-6 at 3–4. The district court advised Wright that "pursuant to the plea agreement, you have waived the right to appeal except in certain very limited circumstances set out in the plea agreement. If you felt those circumstances applied, you have a limited time to apply for an appeal—provide notice of an appeal." *Id.* at 21. The court then advised Wright that if he could not "afford the cost of an appeal, you may apply

to proceed with an appeal at no cost to you." *Id.* at 21–22. Never during the sentencing hearing did Wright indicate he did not understand the nature of an appeal.

Assuming that the record does not answer the question of whether Wright's counsel adequately consulted with Wright about the advantages and disadvantages of taking an appeal, this court looks to (1) whether Wright reasonably demonstrated an interest in appealing, or (2) whether a rational defendant in Wright's position would have sought an appeal. *See Flores-Ortega*, 528 U.S. at 480. There is no evidence that Wright demonstrated to counsel an interest in appealing, and Wright does not suggest that he ever demonstrated such an interest. Thus, the court finds that Wright did not reasonably demonstrate an interest in appealing. On whether a rational defendant in Wright's position would have wanted to appeal, the Supreme Court in *Flores-Ortega* stated:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

528 U.S. at 486.

Here, Wright pled guilty, and there is no suggestion that the plea was invalid. Wright's plea included a waiver provision by which he expressly waived his right to appeal his conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. *See* Doc. No. 8-2 at 9. Such appeal waivers are valid if made knowingly and voluntarily. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005)

10

(internal citation omitted). Wright does not demonstrate that the waiver in his case was unknowing or involuntary. The magistrate judge who conducted the change of plea hearing specifically questioned Wright about the waiver provision and confirmed that he understood its terms.[4] Doc. No. 8-4 at 9–10. The plea agreement and valid waiver provision limited potentially appealable issues for Wright, and Wright has presented no non-frivolous, non-waived ground upon which he might have appealed. Wright also received the benefits of a plea agreement under which a count of distribution of child pornography was dismissed. Moreover, as provided under the plea agreement, Wright received a total reduction of three levels in his offense level for acceptance of responsibility and timely notifying authorities of his intention to plead guilty. *See* Doc. No. 10-2 at 9; Doc. No. 8-6 at 4. The plea agreement also reserved to Wright the right to argue for a downward variance of no less than five years. Doc. No. 8-2 at 5. At sentencing, the district court granted Wright a substantial downward variance and imposed concurrent sentences of 84 months for each conviction, where Wright's calculated guidelines range was from 151 to 188 months' incarceration. Because of the variance, the sentence Wright received was 67 months less than what he faced under bottom end of the guideline range applicable to him. Under these circumstances, the undersigned finds that a rational defendant in Wright's position would

---

[4] The Eleventh Circuit has held that to enforce such a waiver, the Government must demonstrate either that (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record shows that the defendant otherwise understood the full significance of the waiver. *United States v. Bushert,* 997 F.2d 1343, 1351 (11th Cir. 1993).

not have wanted to appeal, and there were no circumstances known or knowable to Wright's counsel from which counsel should have concluded that a rational defendant would want to appeal.

Because Wright did not reasonably demonstrate an interest in appealing, and a rational defendant in Wright's position would not have sought an appeal, *see Flores-Ortega*, 528 U.S. at 480, Wright is entitled to no relief on this claim of ineffective assistance of counsel.

### 3.     *Multiplicitous Indictment and Double Jeopardy*

Wright contends that his counsel rendered ineffective assistance by failing to challenge the indictment for multiplicity and double jeopardy violations. Doc. No. 2 at 13–19. According to Wright, his convictions under the indictment for both receiving child pornography and possessing child pornography were multiplicitous and violated double jeopardy. *Id.*

"An indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Sirang*, 70 F.3d 588, 595 (11th Cir. 1995). "A multiplicitous indictment therefore violates the principles of double jeopardy because it gives the jury numerous opportunities to convict the defendant for the same offense." *United States v. Williams*, 527 F.3d 1235, 1240, 1241 (11th Cir. 2008). The test for multiplicity "is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The Eleventh Circuit has held "that charges are not multiplicitous where they differ by a single element or fact." *United States v. England*, 489

F. App'x 299, 303 (11th Cir. 2012) (citing *United States v. Costa*, 947 F.2d 919, 926 (11th Cir. 1991)).

Wright's indictment charged separate dates for the receipt and possession counts and specifically excluded the images charged in the receipt count (Count 1) from the images charged in the possession count (Count 3). *See* Doc. No. 8-1 at 1–3. Wright was charged in Count 1 with receiving the following specific files on or about February 26, 2012:

> Pthc-2010    (K*****)    Sweet    sugar    4yo    girl    with    dad.mpg, 2010_Pthc_Pedo_F******Falko-Video_Film2.mpg, and PTHC pedo 2011 12yo D**** P***** 2011 02 02 _11500.avi.

Doc. 8-1 at 2. These images listed in Count 1 (the receipt count) were excluded from the images listed in Count 3 (the possession count), because Wright was charged in Count 3 with possessing "on or about an unknown date in March 2012 . . . visual depictions of actual minors engaging in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(8)(A), *and exclusive of those visual depictions that have been received in Count One*." Doc. No. 8-1 at 3 (emphasis added). Although the images charged in Counts 1 and 3 were on the same computer, the images Wright was charged with receiving differed from the images he was charged with possessing. Moreover, Wright's indictment clearly charged different, non-overlapping dates for Counts 1 and 3. Wright's multiplicity argument lacks merit. *See United States v. Woods*, 684 F.3d 1045, 1061 (11th Cir. 2012) (rejecting defendant's claim of multiplicity where "[n]othing in the indictment indicated

that the same images underlying the receipt [of child pornography] count underlie the possession [of child pornography] counts").

Likewise, Wright's double jeopardy argument lacks merit. Counts 1 and 3 of the indictment charged violations of two different statutes and alleged two different dates for the receipt and possession offenses. And as indicated above, the images Wright was charged with receiving differed from the images he was charged with possessing. Indeed, the indictment specifically excluded the images received from the images possessed.

Wright is entitled to no relief on his claim that his counsel was ineffective assistance for failing to challenge the indictment for multiplicity and double jeopardy violations. Counsel cannot be ineffective for failing to present a meritless claim. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

### 4.      *Inaccurate Information in Indictment*

Wright contends that his counsel rendered ineffective assistance by failing to investigate or challenge inaccurate information in his indictment. *See* Doc. No. 2 at 15–17. In this regard, Wright says (1) there was no evidence he received child pornography on February 26, 2012, as alleged in Count 1; (2) there was no evidence he possessed child pornography from on or about an unknown date in March 2012, as alleged in Count 3; (3) there was no evidence as to what was distributed, who it was distributed to, or what files were distributed, in support of the allegations in Count 2 of the indictment; and (4) he could

not have possessed any child pornography past March 7, 2012, because he pawned his computer on that date. *Id.*

By these assertions, Wright is essentially disavowing everything he pled guilty to. During the the change of plea colloquy, he admitted to the facts alleged in Counts 1 and 3 of the indictment, which waived any claim that there was no factual basis for the indictment. Now, he makes the self-serving and unsupported claim that there was no evidence to support the charges against him. Wright fails to show that there was inaccurate information in his indictment. Therefore, he cannot show how he was prejudiced by his counsel's failure to investigate or challenge allegedly inaccurate information in his indictment.[5]

Wright's assertions regarding the distribution charge in Count 2 of the indictment are irrelevant. Count 2 was dismissed, and no conviction or sentence was imposed for Wright's distribution of child pornography.

To show prejudice based on defense counsel's alleged failure to investigate, a defendant must show what information would have been obtained from the investigation and also show it would have produced a different outcome in the proceedings. *See Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005) (the defendant could not show "prejudice,"

---

[5] As the Government observes, Wright's contention that he could not have possessed any child pornography past March 7, 2012, arguably amounts to an admission that he possessed child pornography as alleged in Count 3 of the indictment. *See* Doc. No. 8 at 32–33. Wright admits that he "pawned his laptop computer on March 7, 2012," which means he physically possessed the laptop, which contained child pornography, up until at least March 7, 2012. *Id.*

because he failed to demonstrate specifically what further evidence would have been uncovered and how it would have affected the outcome of the trial, and instead, rested on "general allegations," which the court held were insufficient); *see also, e.g., United States v. Price*, 357 F. Supp. 2d 63, 67–68 (D.D.C. 2004). Wright does not demonstrate that his counsel's actions were professionally unreasonable or that he was prejudiced by counsel's allegedly deficient performance. He is entitled to no relief based on this claim of ineffective assistance of counsel.

### 5.     *Search of Computer*

Wright contends that his counsel rendered ineffective assistance by failing to challenge the warrantless search of his computer. *See* Doc. No. 2 at 19–26. Wright argues that law enforcement's downloads of the child pornography that Wright made publicly available on the Internet through a peer-to-peer file sharing network required a search warrant and violated the Fourth Amendment and the Wiretap Act (18 U.S.C. §§ 2510–2522). He further argues that the Government's acquisition of his IP address violated the Fourth Amendment and the Wiretap Act. *Id.*

The Supreme Court has determined that to challenge a search under the Fourth Amendment, a defendant must establish both a subjective and an objective expectation of privacy in the area or object searched. *Katz v. United States*, 389 U.S. 347, 361 (1967); *see United States v. Segura–Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006). The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared

to recognize as reasonable. *Katz*, 389 U.S. at 361; *see United States v. Epps*, 613 F.3d 1093, 1097–98 (11th Cir. 2010). Situations involving the transmission of electronic signals are subject to the *Katz* analysis. *United States v. Jones*, 132 U.S. 400, 411 (2012). Information voluntary conveyed to the public is not a search. *Id*. at 409.

In *United States v. Norman*, 448 F. App'x 895 (11th Cir. 2011), an Eleventh Circuit panel considered whether the Fourth Amendment was violated when law enforcement downloaded child pornography from an individual sharing child pornography through peer-to-peer software on the Internet. The panel found that even if "Norman held a subjectively reasonable expectation of privacy in the shared files on his computer, this expectation was not objectively reasonable." *Id*. at 897. Norman's Fourth Amendment rights were not violated, because Norman placed "the contents of the folder the police searched into the public domain, thereby negating any reasonable expectation of privacy in the folder." *Id*. The panel held that the "contents of the shared folder on Norman's computer were knowable to law enforcement without physical intrusion to Norman's house because this information was available to members of the public." *Id*. Consequently, no Fourth Amendment violation occurred. *Id.*

In Wright's case, as in *Norman*, law enforcement downloaded the child pornography from Wright's computer without physical intrusion because Wright made the files publicly available on the Internet through LimeWire, a peer-to-peer file sharing network. *See* Doc. 10-2 at 5–6, ¶ 7. The child pornography was available on the Internet for the public to download, and Wright could have no reasonable expectation of privacy in the files. Peer-

to-peer file sharing "makes files on a computer available for download by the public, including law enforcement. . . . Public exposure of information in this manner defeats an objectively reasonable expectation of privacy under the Fourth Amendment." *United States v. Conner*, 521 F. App'x 493, 497 (6th Cir. 2013).

The circuits that have taken up this question uniformly hold that there is no reasonable expectation of privacy in files the government obtained using peer-to-peer sharing services like LimeWire. *See United States v. Stults*, 575 F.3d 834, 843 (8th Cir.2009) ("One who gives his house keys to all of his friends who request them should not be surprised should some of them open the door without knocking."); *United States v. Ganoe*, 538 F.3d 1117, 1127 (9th Cir. 2008); *United States v. Perrine*, 518 F.3d 1196, 1205 (10th Cir. 2008); *Conner*, 521 F. App'x at 497.

No Fourth Amendment violation occurred in Wright's case. Therefore, Wright's counsel was not ineffective assistance for failing to allege a Fourth Amendment violation. As previously noted, counsel cannot be ineffective for failing to present a meritless claim. *Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974.

Wright also claims that the Wiretap Act was violated when law enforcement downloaded the child pornography from LimeWire. The Wiretap Act generally prohibits the intentional "interception" of "wire, oral, or electronic communications." *See* 18 U.S.C. § 2511(1). Courts have rejected the notion that law enforcement's use of peer-to-peer file sharing constitutes an "interception" for purposes of the Wiretap Act. *See United States v. Willard*, 2010 WL 3784944, at *3 (E.D. Va. 2010) (denying a motion to suppress and ruling

law enforcement's use of specialized Peer Spectre and Wyoming Toolkit software "did not constitute a wiretap because the software does not intercept electronic communications" but instead "reads publicly available advertisements from computers identified as offering images of child pornography for distribution and identifies their IP addresses"). Law enforcement's downloads of Wright's publicly shared child pornography through LimeWire did not violate the Wiretap Act. Accordingly, the failure by defense counsel to to allege a violation of the Wiretap Act did not constitute ineffective assistance of counsel.

Wright also contends that law enforcement's acquisition of the IP (Internet Protocol) address for his computer violated the Fourth Amendment and required a Title III warrant. An IP address is "the unique address assigned to a particular computer connected to the Internet. All computers connected to the Internet have an IP address." *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003). Wright cites to no evidence to support his contention that the Government illegally obtained his IP address, nor does he establish how the Government obtained his IP address. Instead, Wright relies on speculation. Moreover, courts have repeatedly "declined to recognize a Fourth Amendment privacy interest in IP [internet protocol] addresses." *Penton v. United States*, 2013 WL 6009537, at *13 (M.D. Ala. 2013). *See, e.g., United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010) ("every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment"); *United States v. Christie*, 624 F.3d 558, 574 (3rd Cir. 2010) ("no reasonable expectation of privacy exists in an IP address, because that information is also conveyed to and, indeed, from third parties,

including ISPs"); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (warrantless government surveillance of email to/from addresses and IP addresses do not constitute search because defendant voluntarily turned over the information in order to direct the third party server); *Perrine*, 518 F.3d at 1204–05 (collecting cases).

Regarding the Wiretap Act, Wright does not demonstrate that law enforcement intercepted his IP address as it was being transmitted. Consequently, he fails to show that the Wiretap Act even applies to the Government's acquisition of his IP address. *See Willard*, 2010 WL 3784944, at *3; *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir.2002) ("Congress . . . accepted and implicitly approved the judicial definition of 'intercept' as acquisition contemporaneous with transmission. We therefore hold that for a website . . . to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage.").

Where a claim of ineffective assistance stems from counsel's failure to move to suppress evidence, the defendant must show that an underlying constitutional claim has merit. *See Green v. Nelson*, 595 F.3d 1245, 1251–52 (11th Cir. 2010); *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (defendant must establish prejudice where counsel failed to file a motion). Because Wright does not show that he had a privacy interest in his IP address or that the Government illegally obtained his IP address, he fails to show that his counsel was ineffective for failing to move to suppress the Government's evidence on grounds that it was obtained in violation of the Fourth Amendment and/or the Wiretap Act.

**C.      Magistrate Judge's Authority to Accept Guilty Plea**

In an amendment to his § 2255 motion (Doc. No. 24), Wright claims that the magistrate judge lacked the statutory and constitutional authority to accept his guilty plea. Binding precedent in this circuit forecloses Wright's claim. *In United States v. Woodard,* 387 F.3d 1329 (11th Cir. 2004), the Eleventh Circuit, joining every other circuit to have addressed the issue at the time, held that (1) the Federal Magistrates Act, 28 U.S.C. § 636, authorizes a magistrate judge, with the defendant's consent, to conduct Fed.R.Crim.P. 11 guilty plea proceedings, and (2) the statutory grant is not an impermissible usurpation of Article III powers, U.S.C.A. Const. Art. 3, § 1 et seq.[6] *See Woodard*, 387 F.3d at 1331 (citing cases). Like the defendant in *Woodard*, Wright consented to have his guilty plea taken by the magistrate judge. Wright is entitled to no relief on this claim.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Wright be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **June 18, 2019**. A party must specifically identify the factual findings and legal

---

[6] With the exception of the Seventh Circuit in *United States v. Harden*, 758 F.3d 886, 891–92 (7th Cir. 2014), every court to have examined this issue has held that magistrate judges are authorized to accept guilty pleas with the defendant's consent. The decisions of the Seventh Circuit Court of Appeals, however, are not controlling in this matter. The decision of the Eleventh Circuit in *Woodard* is.

conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 4th day of June, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE